UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAVELIN GLOBAL COMMODITIES (UK) LTD<br><br>VERSUS<br><br>XCOAL ENERGY & RESOURCES | CIVIL ACTION NO.:<br><br>JUDGE |

**COMPLAINT FOR DAMAGES**

**MAY IT PLEASE THE COURT:**

Javelin Global Commodities (UK) Ltd ("Javelin"), as owner of approximately 50,000 metric tons of coal, and as charterer of the M/V BULK DESTINY, files this Complaint against Xcoal Energy & Resources ("Xcoal"), and in support, states:

**JURISDICTION AND VENUE**

1. This Complaint presents maritime claims within the meaning of Federal Rule of Civil Procedure 9(h), and Rules B and E of the Supplemental Rules for Admiralty and Maritime Claims ("Supplemental Admiralty Rules").

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1333, because this is an action for damages pursuant to XCoal's wrongful Rule B attachment of Javelin's cargo aboard the M/V BULK DESTINY located within this District at the time of attachment.

3. Further, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the dispute is between citizens of a State and citizens or subjects of a foreign state and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in the Southern District of Alabama pursuant to 28 U.S.C. § 1391(b)(2) and (b)(3).

## PARTIES

5. Plaintiff Javelin is a private limited company formed under the laws of England and Wales with its principal place of business in London, England.

6. Defendant Xcoal is a limited partnership with its principal place of business located at One Energy Place, Suite 900, Latrobe, Pennsylvania 15650.

## FACTUAL BACKGROUND

7. Javelin and Xcoal are business competitors in the commodity trading market, including the coal market.

8. On September 22, 2023, Defendant Xcoal Energy & Resources ("Xcoal") filed a verified complaint against Acciaierie D'Italia S.P.A. ("ADI"), seeking damages and issuance of a writ of maritime attachment and garnishment pursuant to Rule B of the Supplemental Rules for Admiralty and Maritime Claims.

9. Xcoal sought to attach a cargo of coal onboard the M/V BULK DESTINY (IMO No. 9781994) to obtain security in aid of a foreign arbitration arising out of ADI's alleged various breaches of agreements with Xcoal.

10. Xcoal alleged: "…on information and belief that ADI is the owner of the coal that is located in this District and is currently aboard and/or will soon be loaded aboard the M/V BULK DESTINY (IMO No. 9781994), berthed at the Alabama State Docks McDuffie Coal Terminal in Mobile, Alabama, which vessel is currently within this District."

11. Consequently, and based upon these verifications, on September 22, 2023, this Court issued an Order for Writ of Attachment and Garnishment of the subject coal.

12. Xcoal supported these statements and allegations with a Sworn Declaration from Joel Momper, President and CFO of Xcoal.

13. However, the allegations in the pleading as supported by Declaration were false, or, at best, omitted material facts. As subsequently found by Magistrate Judge Cassady, and as Xcoal knew, or ought to have known, given the manner in which Xcoal structures its own transactions, specifically transactions with ADI that are at issue in the arbitration, that ADI was not and is not the owner of the property in question and thus the grounds for maritime attachment could not be met.

14. Rather, at all times, Javelin held exclusive title and interest to the cargo of coal onboard the non-party garnishee vessel.

15. On or about September 23, 2023, Xcoal seized Javelin's property and by extension, the BULK DESTINY, effectively arresting the vessel.

16. At the time of the attachment and seizure, the Vessel had completed loading and incurred demurrage as she could not leave due to the attachment.

17. Javelin was the charterer of the vessel.

18. On September 24, 2023, Javelin provided notice to counsel representing Xcoal of its ownership of the coal and requested that the attachment be withdrawn.

19. On September 25th, counsel for Javelin sent a subsequent notice and request for voluntary dismissal of the attachment, providing Xcoal with documents requested to verify that Javelin was and is the owner of the cargo in question.

20. In that correspondence, Javelin advised Xcoal that if the attachment and arrest was not lifted by noon on September 26, Javelin would seek court intervention and request damages resulting from the wrongful seizure. Xcoal did not respond to this request.

## COUNT I – WRONGFUL ATTACHMENT/SEIZURE

21. Javelin incorporates the preceding paragraphs above as if fully stated herein.

22. Javelin is the charterer of the M/V BULK DESTINY (IMO 9781994) pursuant to a charter which requires Javelin to pay freight to the vessel owner for the carriage of the cargo onboard the vessel in addition to other operating expenses while the vessel is under charter.

23. In return for payment of freight, Javelin obtained the exclusive right to load and ship the cargo onboard the M/V BULK DESTINY during the laycan of 21-30 September 2023.

24. On or about September 22, 2023, the M/V BULK DESTINY arrived at the Alabama State Docks McDuffie Coal Terminal in Mobile, Alabama, to load a cargo of coal it had contracted to sell to Acciaierie D'Italia S.P.A. ("ADI").

25. On or about September 22, 2023, the M/V BULK DESTINY and her cargo of coal were seized by Lott Ship Agency, Inc., acting at the request of Xcoal and by this Court's Writ of Arrest and Foreign Attachment. Lott Ship Agency, Inc. was appointed as a substitute custodian for the M/V BULK DESTINY.

26. Pursuant to the Charter agreement, Javelin is liable to Pangaea, the vessel owners, for demurrage at the loading port at the rate of $23,000 per day or pro rata.

27. As a result of Xcoal's wrongful attachment of Javelin's property, Javelin incurred damages until the vessel's release on October 12, 2023.

28. Javelin has made payment for demurrage charges in the amount of $430,259.72.

29. Javelin was an innocent third party to the disputes between Xcoal and ADI, and provided ample proof to that effect. Notwithstanding, Xcoal refused to withdraw its wrongful attachment of Javelin's property, which has been found unlawful.

30. Moreover, based upon the stances taken by Xcoal in the underlying arbitration, its own commercial structure for dealing with ADI and the matters in dispute in the Swiss arbitration, Xcoal had *actual knowledge* or, alternatively, ought to have known that the property it was seizing was not the property of ADI.

31. At a minimum, Xcoal acted with complete indifference and reckless disregard of another's property rights, that being Javelin, and conducted no due diligence to support the allegations in the Declaration.

32. As such, Xcoal's complete disregard of the facts proving Javelin's exclusive possession and ownership of the attached cargo of coal constitutes bad faith and/or manifest disregard for the property rights of another, in addition to a failure to conduct a minimum of due diligence.

33. Further, Xcoal quantified its claims at the Swiss Arbitration underlying the present matter at $3,437,552.00, yet filed a verified complaint alleging its damages at $38,000,000.00 and seeking attachment of the entire cargo of coal worth more than $14,000,000.00 as security. The lack of any request for less security – especially after appearing in Court with no argument concerning the lack of ownership over a vast majority of the coal attached – evidences a lack of good faith and gross negligence.

34. Xcoal additionally failed to notify ADI of the attachment proceedings until four days after the cargo and vessel were seized, further contributing to delay and damages.

35. Javelin is entitled to the damages incurred as a result of the daily losses Javelin has suffered from the wrongful seizure of its cargo and the arrest of the M/V BULK DESTINY. Javelin has suffered damages in the amount of *at least* $430,259.72. Javelin reserves the right to

supplement this amount to account for additional demurrage and other costs and losses accrued, and reserves all rights to amend its complaint as necessary.

36. In addition, Javelin submits that the Plaintiff's attachment of Javelin's cargo of coal constitutes a wrongful attachment, and Javelin is entitled to damages, including attorneys' fees, for each day the cargo remained seized in the present amount of $100,000.00.

37. Xcoal's wrongful attachment gives rise to an *in personam* maritime claim in favor of Javelin for all damages caused by Xcoal's actions.

## COUNT II: INTENTIONAL INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP

38. Javelin incorporates the preceding paragraphs above as if fully stated herein.

39. Javelin has been damaged by Xcoal's intentional interference with Javelin's business and contracts with ADI and the vessel owner.

40. Javelin and ADI had an existing business relationship and entered into a contract by which Javelin agreed to sell, and ADI agreed to buy, a cargo of coal. Namely, Javelin and ADI entered into a Master Coal Purchase and Sale Agreement dated as of September 6, 2023 ("Master Agreement"). The Master Agreement is a framework agreement, pursuant to which the parties may enter into Transactions to be documented under Confirmations (each such terms as defined in the Master Agreement).

41. Javelin and ADI then executed a Purchase and Sale Confirmation No. AIE23(TS)0001 ("Confirmation") for approximately 50,000 metric tons of Javelin Oak Grove LV Hard-Coking Coal.

42. At all material times, Xcoal knew of the business relationship between ADI and Javelin, and knew of these contracts.

43. At all material times, Xcoal knew of the business relationship between Javelin and Pangaea Logistics Solutions (BVI), Ltd. ("Pangaea"), and knew of the contract for the use of the vessel, or reasonably should have known.

44. By seizing Javelin's property and arresting the vessel, Xcoal intentionally and purposefully interfered with these business relationship and contracts.

45. Javelin has suffered damages resulting from this activity, including but not limited to demurrage costs, attorney's fees, loss of reputation and other damages which will be proven at trial.

46. Xcoal is liable to Javelin for the damages described above, plus interest.

47. Javelin moves this Honorable Court for a judgment rendered against Xcoal and in favor of Javelin.

## COUNT III: TORTIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP

48. Javelin incorporates the preceding paragraphs above as if fully stated herein.

49. In the alternative, Javelin has been damaged by Xcoal's tortious interference with Javelin's business and contracts.

50. Javelin and ADI had a business relationship and entered into a contract by which Javelin agreed to sell, and ADI agreed to buy, a cargo of coal. Namely, Javelin and ADI entered into a Master Coal Purchase and Sale Agreement dated as of September 6, 2023 ("Master Agreement"). The Master Agreement is a framework agreement, pursuant to which the parties may enter into Transactions to be documented under Confirmations (each such terms as defined in the Master Agreement).

51. Javelin and ADI then executed a Purchase and Sale Confirmation No. AIE23(TS)0001 ("Confirmation") for approximately 50,000 metric tons of Javelin Oak Grove LV Hard-Coking Coal.

52. Additionally, and as noted *supra*, Javelin and the vessel owner had entered into a contract by which Javelin chartered the vessel and was responsible for payment of freight.

53. At all material times, Xcoal knew of these business relationships between ADI and Javelin and between Javelin and Pangaea, the vessel owner, and knew of these contracts, or should have known.

54. Despite this knowledge, Xcoal decided to seize Javelin's property in order to exert commercial pressure upon ADI for an unrelated commercial dispute solely between ADI and Xcoal.

55. Prior to undertaking this decision, Xcoal failed to perform the most basic of due diligence to ascertain whether the property it was seizing, and by extension the vessel, were "property of ADI."

56. Moreover, the decision by Xcoal to seize the cargo of coal *after it had been loaded upon the vessel*, was done maliciously and with the purpose of exerting maximum commercial pressure upon ADI.

57. Moreover, the decision to attach the property after it had been transferred onto the vessel, meaning that the charterer would thus be liable for costs to store the seized property, was made consciously and deliberately by Xcoal for the purpose of damaging Javelin, its commercial competitor.

58. At all material times, Xcoal knew or should have known, through the exercise of ordinary due diligence, that the property in question was Javelin's, not ADI's, and that its actions were interfering with contracts of Javelin.

59. By seizing Javelin's property in this manner, Xcoal tortiously interfered with this business relationship and contracts, and has damaged Javelin.

60. Javelin has suffered damages resulting from this activity, including but not limited to demurrage costs, attorney's fees, loss of reputation and other damages which will be proven at trial.

## COUNT IV: COSTS, FEES, AND MARSHAL'S EXPENSES

61. Javelin incorporates the preceding paragraphs above as if fully stated herein.

62. Javelin is entitled to tax the costs of the wrongful detention and recover all costs and fees under Supplemental Admiralty Rule E(2)(b), as this is an action *in personam* with process of maritime attachment.

63. Javelin prays that this Court require Xcoal to give security, or additional security, in such sum as the Court shall direct to pay all costs and expenses that shall be awarded against Xcoal by any interlocutory order or by a final judgment issued by this Court, or on appeal by any appellate court.

64. Pursuant to 28 U.S.C. § 1921, Javelin is further entitled to all costs and expenses for the keeping of attached property, actual expenses incurred, such as storage, moving, boat hire, or other special transportation, watchmen's or keepers' fees, insurance, and an hourly rate, including overtime, for each deputy marshal or marshal's agent(s) required for special services, such as guarding, inventorying, and moving of the attached property and the M/V BULK DESTINY.

65. Xcoal is liable to Javelin for the damages described above, plus interest, attorneys' fees, and all costs incurred as a result of the wrongful attachment.

66. Javelin moves this Honorable Court for a judgment rendered against Xcoal and in favor of Javelin.

## PRAYER FOR RELIEF

**WHEREFORE**, Intervenor Javelin Global Commodities (UK) Ltd prays as follows:

a) That this Complaint be deemed good and sufficient;

b) That process be issued against Xcoal, *in personam*, citing Xcoal to appear and answer under oath, all and singular, the matters alleged in this Complaint;

c) That after due proceedings, judgment be entered in favor of Javelin and against Xcoal Energy & Resources, *in personam*, for all amounts recoverable, plus prejudgment interest, post-judgment interest, costs, attorneys' fees, and expenses of this case; and

d) That the Court grant Javelin such other and further relief as may be just, equitable, and proper.

Dated: November 22, 2023.            Respectfully submitted,

*/s/ Matthew C. McDonald*
MATTHEW C. MCDONALD (MCDOM2996)
JONES WALKER, LLP
11 North Water Street, Ste. 1200
Mobile, Alabama 36602
Telephone:  (251) 439-7576
Facsimile:  (251) 433-4106
E-Mail:        mmcdonald@joneswalker.com

and

        L. ETIENNE BALART (Admitted *pro hac vice*)
(LA Bar No. 24951)
SETH BLACKLEDGE (Admitted *pro hac vice*)
(LA Bar No. 39804)
J<small>ONES</small> W<small>ALKER</small>, LLP
201 St. Charles Avenue - 48th Floor
New Orleans, Louisiana 70170-5100
Telephone:   (504) 582-8584
Facsimile:    (504) 589-8584
E-Mail:       ebalart@joneswalker.com
                 sblackledge@joneswalker.com

***Attorneys for Javelin Global Commodities (UK) Ltd.***